IN THE UNITED STATES DISTRICT COURT NORTHERN DISTRICT EASTERN DIVISION

DEANDRE BRADLEY

V          petitioner

STANLEY SACKS, STATE OF ILLINOIS,

KIM FOX, CHICAGO POLICE DEPAETMENT

DET. DONNELLY, SGT. DAVEY. OFFICER MANCHA,

OFFICER WILLIAMS, OFFICER GRUBA

1:22-cv-00577
Judge Gary S. Feinerman
Magistrate Judge Heather K. McShain
PC14/Random

MOTION FOR WRIT OF HABEAS CORPUS AND COMPLAINT FOR 42 U.S.C 1983 DAMAGES

I. PARTIES

1. Petitioner DEANDRE BRADLEY is the pro-se petitioner who brings this writ to protect his right, but the same claims constitute viable U.S 1942 1983 in violation of the same rights that would allow relief under habeas corpus and cannot bring this claim twice requesting relief

2. Defendant Stanley Sacks is named in this suit he is the current trial judge and is the one with the unlawful authority to continue to hold petitioner in his court reason the habeas corpus is directed towards him the state of Illinois.

3. Defendant titled Chicago police department is named as an entity who allows its employees to engage in unlawful arrest such as petitioner, there were over 12 arresting officers involved who openly engaged in this unlawful arrest.

4. Defendants Det. Donnelly at all times relevant to the complaint was a Chicago police officer who is now retired is sued in his individual, official capacity and under color of law

5. Defendants Sgt. Davey, Officer Mancha, Officer Williams, and officer Gruba at all times relevant to this complaint were employed and are sued in their individual, official capacity and under color of law

II. JURISDICTION

6. This court has jurisdiction over the petitioners motion writ for habeas corpus pursuant to 28 U.S. Code S.S 2254 and petitioner 42 U.S.C S.S 1983 U.S.C. 14th amendment claims and state claims pursuant to 28 U.S.C. 1331, 1343, & 1367

FILED

FEB 01 2022

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

### III. Habeas corpus Introduction

7.(a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

8. To satisfy the above statue the petitioner believes it applies to his situation because while he is not in the direct custody of the court, he is on a cash paid bond pursuant to the preliminary judgment of a state court in the form of a grand jury, but this custody is in violation of both the U.S. Constitution and Illinois Constitution

9. Respectfully stated review of such a matter would serve the public interest as well in what the petitioner is asserting herein

10. The petitioner was arrested by the Chicago Police Department on July 13, 2021

11. Chicago police department is named as an entity who allows its employees to engage in unlawful arrest such as petitioner, there were over 12 arresting officers involved including supervisors who openly engaged in this unlawful arrest.

12. Discovery will review that all arrest that stem from complaints by citizens that are the subject to Chicago police investigation where a suspect is identified and at that point the Chicago police department is required to take this information to magistrate judge to get a warrant, but instead they get together and implement their own justice

13. Petitioner will show through discovery that this is not a onetime isolated incident and for an entire police station to disregard that clearly established law and known procedure, and move together like this is disturbing

14. No one is addressing this policy that is unwritten and knowingly unlawful but is so well settled that the officers of Area South Chicago Police Department along with defendant state of Illinois and defendant KIM FOX head prosecutor and represents the states attorney who has been put on notification recognize that the arrest was unlawful but refuse to act are all violating petitioners' rights

15. Petitioner states undisputable facts that tell a story, and this story is a violation of his rights

### UNDISPUTABLE FACTS

16. Petitioner was receiving emergency medical treatment as a walk-in at the family medical clinic 11101 SOUTH STATE STREET CHICAGO IL 60628 that was resulting in the immediate referral to Roseland hospital to address his medical concerns.

17. Petitioner by legal definition is a paraplegic who is wheelchair bound due to medical professional conclusion that strenuous activity on the spinal canal of petitioner's injury causes repeated injury and paralysis. Petitioner is also urinal and bowel incontinent in which he requires the daily use of catheters and diapers.

18. While at the medical center the Chicago Police Department Knowingly In bad faith entered the medical clinic interfered with the treatment of the petitioner, placed him in hand cuffs and rolled him outside where his biological brother LARRY MITCHELL also had been placed in handcuffs and the vehicle Mr. Mitchell borrowed from someone was being thoroughly search.

19. The petitioner immediately questioned the Sergeant identified as defendant Sgt. Davey who was doing the searching asking him who gave you permission and his immediate response was "WE HAVE A WARRANT"

20. Petitioner asked again tried to give defendant Sgt. Davey the opportunity to come clean about the warrant because petitioner didn't believe they had one (reason explained below).

21. Petitioner was immediately shut down by defendant Sgt. Davey again who stated "WE HAVE A WARRANT"

22. Nothing was found in this search; petitioner was taken directly into a police station where he continued to request the medical treatment, he was receiving prior to its interference by the Chicago Police Department.

23. The treatment was denied until petitioner made a video statement corroborating the insufficient evidence that defendant Det. Donnelly refused to take to a grand jury alone.

24. Instead, he would go so far as to not only authorize the removal of the petitioner from the medical clinic but follow him in a holding cell and deny him medical treatment until a statement was made.

25. Defendant Det. Donnelly was the lead detective and was the induvial who sent what the petitioner refers to as the abduction and what is described in the criminal code pursuant to 720 ILCS kidnapping.

```
      (720 ILCS 5/10-1) (from Ch. 38, par. 10-1)
        Sec. 10-1. Kidnapping.
        (a) A person commits the offense of kidnapping
   when he or she knowingly:
            (1) and secretly confines another against
   his or her
        will;
            (2) by force or threat of imminent force
   carries
        another from one place to another with intent
        secretly to confine that other person against
        his or her will; or
```

```
                (3) by deceit or enticement induces another
    to go
        from one place to another with intent secretly
        to confine that other person against his or her
        will.
        (b) Confinement of a child under the age of 13
    years, or of a person with a severe or profound
    intellectual disability, is against that child's or
    person's will within the meaning of this Section if
    that confinement is without the consent of that
    child's or person's parent or legal guardian.
        (c) Sentence. Kidnapping is a Class 2 felony.
    (Source: P.A. 99-143, eff. 7-27-15.)
```

26. The actions described in the above statue specifically sec.(a)(1)(3) would take place when defendant Sgt. Davey with instructions from defendant Det. Donnelly would lead a team of Chicago police officer defendants Williams who performed her own illegal search of petitioner's brother, the car, and his belongings and defendants Mancha and Gruba unlawfully searched and arrested the petitioner and physically removed petitioner from the medical clinic despite petitioner request to finish

27. This raid on the medial clinic place both the petitioner and his brother under arrest and when questioned by petitioner defendant Sgt. Davey just outright lies and claim to have a warrant to search and arrest the petitioner when no actual warrant ever existed.

28. Defendant Det. Donnelly, Sgt. Davey, and the Chicago police department knowingly and secretly confined the petitioner against his will when without the knowledge and consent of the courts who give the permission to exert custody over citizens of the U.S, they acted secretly as if they had this courts authority through deceit inducing the petitioner to jail, to stand trial to be imprisoned which petitioner faces 6-30 years of imprisonment

29. Petitioner is currently in the cook county criminal courthouse under the complete custody of this court judge Stanley Sacks presiding at any moment defendant can revoke this bond and have petitioner remanded to the cook county jail for any reason defendant Stanley Sacks is named as a defendant as he holds the sole authority to release petitioner from this or further keep this going as he has deferred to keep this going, in lue of knowledge of a constitutional violation

30. The petitioner is pro se because his public defender at the time was refusing to address the warrant issue and was about to let the state close the discovery without the physical presence of such document so that it can be used or challenged in pretrial, trial, and possible post trial challenges

31. So, petitioner stepped up and at first the state acted as if they had no idea that the arrest was made on the absolute lie coming from a rouge bandit of Chicago police officers acting under their own authority

32. This was a clear violation of the petitioner's constitutional rights both federal and state In People v. McGurn, the defendant rode in a taxi that was stopped on a Chicago Street. 341 Ill. 632, 634 (1930). Two police officers, riding on a streetcar, saw the defendant. Id.

33. They did not see the defendant committing a crime and knew only that they had a "standing order" from a superior officer to arrest the defendant. Id. at 634-35. The officers got into the taxi, found a gun on the defendant, and arrested him. Id. ¶ 56

34. Petitioner was receiving medical treatment at a clinic and not committing no crime there was a "standing order from the superior Det. Donnelly and after search nothing related to the alleged crime was found

35. The court, again reaffirming the necessity of a determination of probable cause by a neutral magistrate, found that "under the constitution of this [s]tate no municipality has authority to clothe any officer with the autocratic power to order the summary arrest and incarceration of any citizen without warrant or process of law and thus render the liberty of every one of its citizenry subject to the arbitrary whim of such officer." (Emphasis added.) Id. at 638.

36. Even while acknowledging the statutory authority to arrest without a warrant, the court emphasized that an officer "has no authority, upon bare suspicion, or upon mere information derived from others, to arrest a citizen and search his person in order to ascertain whether or not he was [violating the law]." Id. at 642. ¶ 57

37. The common thread through all these amendment-era cases is that the mere word of an executive branch official fails, on its own, as a substantiate for a finding of probable cause. The interposition of a neutral magistrate became the paradigm of investigative propriety. Notably, had Illinois borrowed the language of the fourth amendment verbatim, the foundations of these cases would be severely eroded. (See. People v. Bass, 2019 IL App (1st) 160640. ¶ 57)

38. The fourth amendment allows a finding of probable cause on "oath or affirmation." So while the "judgment of the official accuser "would not be enough under the Illinois Constitution (Elias, 316 Ill. at 381), mere affirmation by an executive branch official would be enough under the fourth amendment.

39. This is yet further evidence that the drafters of our constitution made a deliberate choice to use the word "affidavit" in order to provide greater protections in Illinois than the protections enjoyed under the fourth amendment. ¶ 58

40. The Courts acknowledge the long-standing common-law tradition allowing warrantless arrests for felonies where a citizen was "reasonably suspected of being [a] felon [ ]." McGurn, 341 Ill. at 636.

41. That common-law rule has been part of the law in Illinois for many decades. See id. (Citing Illinois statute allowing for warrantless arrest where "a criminal offense has, in fact, been committed and [the officer] has reasonable ground for believing that the person to be arrested has committed it (citing Ill. Rev. Stat. 1929, Ch. 38, ¶ 657)).

42. A similar statutory provision exists today. See 725 ILCS 5/107-2(1)(c) (West 2016) (allowing for warrantless arrest where officer "has reasonable grounds to believe that the person is committing or has committed an offense"). ¶ 59

43. But, as the courts have described, McGurn itself placed limits on this common-law rule that are relevant to the constitutionality of of warrantless arrest stating ;;The constitution of this state does not "clothe any officer with the autocratic power to order the summary arrest and incarceration of any citizen without warrant or process of law." McGurn, 341 Ill. at 638.

44. To hold otherwise would allow "'for officers of the law, urged in some cases by popular clamor, in others by the advice of persons in a position to exert influence, and yet in others by an exaggerated notion of their power and the pride in exploiting it, to disregard the law on the assumption that the end sought to be accomplished will justify the means.'" Id. (quoting Youman v. Commonwealth, 224 S.W. 860, 863 (Ky. 1920)).

45. The mere word of another officer, based on the mere word of another citizen, does not meet the Illinois constitutional threshold for effectuating a lawful arrest. ¶ 60

46. The courts also went so far as to emphasize that applying the limitation set out in McGurn does not impede officers from relying on the collective knowledge of their fellows.

47. In the Petitioners case at this point in the pretrial stage, the state claimed to be unaware of officers claiming to have had a warrant to effectuate this arrest and their position was if officer said they had a warrant that would investigate it.

48. This proved in court December 28, 2022, that no warrant was ever issued when judged Sacks asked the state prior to allowing discovery to close state responded no warrant was ever issued

49. Petitioner asked that his case be dismissed at that very moment due to the fact that stood right before the court, the petitioner made it clear to the trial judge that he was approached by Chicago Police and told that he dad to go with them

50. Officers were deceitful in claiming they had legal jurisdiction over him in the form of a warrant and this was a complete lie, the State can argues that arresting officers can rely on information provided by non-arresting officers as long as the facts known to the non-arresting

officers suffice to establish probable cause. See People v. McGee, 2015 IL App (1st) 130367, ¶ 49.

51. That is the rule and has been at least since the United States Supreme Court's decision in Whiteley v. Warden, 401 U.S. 560, 568 (1971) ("Certainly police officers called upon to aid other officers in executing arrest warrants are entitled to assume that the officers requesting the aid offered the magistrate the information requisite to support an independent judicial assessment of probable cause.")

52. See also United States v. Hensley, 469 U.S. 221, 232 (1985) ("[I]f a flyer or bulletin has been issued on the basis of articulable facts supporting a reasonable suspicion that the wanted person has committed an offense, then reliance on that flyer or bulletin justifies a stop to check identification [citation], to pose questions to the person, or to detain the person briefly while attempting to obtain further information.").¶ 61

53. Significantly, the principles in Whiteley and Hensley apply in a world without investigative alerts and don't apply to this case. In Whiteley, officers relied on information from their colleagues that an arrest warrant had been issued after assessment of the facts by a neutral magistrate. There, probable cause had been asserted and properly tested before a judge, so unless the non-arresting officers turned out to be lying, the arrest would still be valid. See Whiteley, 401 U.S. at 568. Hensley did not involve arrests and permitted Terry stops

54. This case is the ("so unless the non-arresting officers turned out to be lying, "case) the arrest would still be valid. See Whiteley, 401 U.S. at 568. The arrest is invalid arresting and non-arresting officers claimed that an arrest warrant had been issue when one never was.

55. There is a tactical advantage to forcing a pro-se litigant to continue pre trail motions in the hope that his argument has flaws, misinterpreted law, to much emotion not enough facts, legal mistakes that might render the moot invalid whatever what the petitioner is not understanding is this why is he, or better stated how is he being held to stand trial facing 6-30 years for a undocumented property crime on the bare complaint of another citizen backed by the unlawful a deceitful act defined by Illinois complied statue as kidnapping?

56. The trail court refuses do dismiss this matter and has the authority to do so but give no reason why, this is traumatizing and causing extreme mental anguish and emotional distress that are taken physical tolls on the petitioner as this has been a court issue since July 2021

57. Too be forced to defend yourself against this alone because no one will fight for you respectfully I ask this federal court to intervene and review this matter and in finding a violation of my constitutional rights in which is so clear direct this trial court to dismiss this case, by law they have and had no authority to lie like that this was unbelievable.

58.Counts petitioner is fully aware he is asserting court holds discretion to add counts not properly construed

59.Defendant Chicago police Department employs' an unlawful, unwritten policy that allow officers to clothe themselves with the autocratic power to order the summary arrest and incarceration of any citizen without warrant or process of law. "In violation of petitioner constitutional 4th, 14th amendments rights, and article 1 sec. 6 of the Illinois constitution

60.Defendants Det. Donnelly, Sgt. Davey, Officers Williams, Gruba, & Mancha violated petitioner right 4th, 14th amendments rights, and article 1 sec. 6 when they performed the raid, search and arrest of petitioner under the verbal command and false pretense that defendants did have a warrant

61.Defendants Det. Donnelly, Sgt. Davey, Officers Williams, Gruba, & Mancha violated petitioner right, 14th amendments rights when they interfered with defendants' medical treatment and denied petitioner his right to medical treatment until he made a statement.

62.Defendants Det. Donnelly, Sgt. Davey, Officers Williams, Gruba, & Mancha violated petitioner rights under the color of law and state laws such as unlawful and false arrest petitioner respectfully ask that all state claims for false arrest be asserted

## IV. RELIEF REQUESTED

63.Petitioner respectfully request that upon review this court find that a constitutional violation had occurred and still occurs that they direct the trial court to dismiss the case with prejudice.

V.

## V. DECLARATORY RELIEF

64.Declaratory relief in the form of this court going on record declaring that "CHICAGO POLICE DEPARTMENT HAS NO AUTHORITY TO APPROACH SEARCH AND ARREST UNDER THE DECEPTIVE PRACTICE, STATING THET HAVE A WARRANT TO ARREST".

## VI. PRELIMINARY INJUNCTIVE RELIEF

65.Petitioners next court date on this matter is February 25, 2022. Petitioner is expected to argue a motion to suppress evidence that he has not yet filed as he seeks address through measures that if a mistake is made it won't send him to prison. Petitioner respectfully ask that the proceedings in the trial court are stayed pending a judicial review and decision on the facts of this case

## MONETARY RELIEF

66. Respectfully petitioner request damages for pain and suffering, mental anguish, emotional distress, false arrest, unlawful arrest, unlawful search, the interference, and refusal of medical treatment inviolate of Illinois state law the 4 and 14 amendments of the U.S constitution and state complied statue in the amount of 3 million dollars compensatory and 2 million punitive damages

67. Petitioner does not see these damages as excessive, but the are very large in nature petitioner has a goal and that goal is that this is made know so that every police officer is aware that this action reflected the very behavior they condemn as a officer of the law no matter how its stated if the Chicago Police Department actions reflect the elements of the kidnapping statue if the petitioner satisfied those elements he would be on trial, respectfully send a message that acts like this is not ok on no level at all.

RESPECTFULLY SUBMITTED

Everything Stated is true and correct

CERTIFICATE OF SERVICE

THIS PETITITION IS BEING FILED WITH THE CLERK OF THE COURT ON FEBUARY 2 2022

BY PETITIONER DEANDRE BRADLEY

S/S

DATE